and Aisha Adamson and Dennis Adamson. And the first, on my papers, it shows the first of you who's going to speak is Mr. Diamond. Good morning, your honors. If it pleases the court, my name is Mark Diamond. I represent Ms. Adamson. Good to have you with us. Thank you, sir. Concerning the misprision charge in its jury charge... That's interesting. You're starting off with the misprison issue and it's the lesser of the offenses charged here by quite a bit. What should I speak about? Three-year maximum punishment, and we got a bunch of Hobbs Act offenses of 20 years each. Right. My client was sentenced... Not for her, right? Not for her. She got a six-month sentence. So, I have to be very careful about what I say. I don't want her to get any more time in the jury. So, concerning the misprision charge, and I can... Would you prefer I start with a speedy trial issue or...? No, no. I want to hear about what you're talking about. You talk about what you want to talk about. I don't know. I'm just commenting. I understand. I can make an observation. Absolutely correct. So, concerning the misprision charge, the district court declined to include the statutory element... You weren't one of the trial lawyers? I was not. I was not. Had you ever been involved in a misprison case? No. Never in my life. And I've never... I don't know anybody who has been.  Really? I've been involved in some. Yeah. How long ago? I hate to ask. It's been a while. It has an interesting spelling. Do you notice that? I was mispronouncing it for about three months before misprision. But concerning getting to that charge, the statutory element that the trial court declined to charge was that the felony had to be a federal felony in order to convict Ms. Adamson. And the Fifth Amendment right to due process and the Sixth Amendment right to jury trial entitled the defendant to jury determination, quote, of every element of the crime with which he is charged beyond a reasonable doubt. The district court twice charged the jury that the underlying crime had to be a felony, but twice left out that it had to be a federal felony before it could convict Ms. Adamson. Now, this is relevant because... Are you arguing both that the jury needs to find that she knew that it was a felony and a federal felony? Because in Olson, the Ninth Circuit actually rejected that federal felony argument. I'm not arguing either at this point with the judge's patience. What I'm arguing precedes that argument. What I'm saying here is that regardless of whether or not Ms. Adamson knew that the underlying felony was a federal felony or not, the fact remains that the felony that she was alleged to have concealed had to be a federal felony. The underlying felonies were essentially robberies. Robberies. Robberies. Possession of a weapon.  That's right. Like convenience stores. Right. A slew of robberies of convenience stores. And they happened to be federal felonies under what we call the Hobbs Act. You know that and I know that. You're saying your client didn't know that. No. I'm not saying... I'm saying the jury didn't know that. And a common person on the street may not know that, but they know that a robbery is a bad thing. True. It's a rough crime. Right. Armed robbery, shooting in the ceiling. Right. Yeah. Absolutely. But of course she was not charging. That's about as serious as she could get. But to Judge Berner's point, the Ninth Circuit I think helps you if you are arguing that the jury should have been instructed that she needed to know at least that it was a felony. Perhaps not that it was federal, but at least that it was a felony because otherwise she didn't know what's the crime that she's committing. That's correct, Judge. But before I even get there, my point is that the jury had to know that it was a felony and there was no evidence there. That's why I said instruct the jury. Correct. But not regardless of whether my client knew it was a federal felony or not, the jury had to know it was a federal felony and there was no evidence in this case from any witness or any other evidence that the underlying crimes were felonies. The judge knew that. The parties knew that. You knew it. I know it. But the jury didn't know that because they were never told by the court that the underlying crime has to be a felony, I'm sorry, a federal felony in order to convict Ms. Adamson. And here's a reason that… And you have the Ninth Circuit case. Right. That helps you a little bit. So let me get to that. Other cases go the other way. Okay. So let me discuss the other case first. This is the Evans case that was brought to the court's attention, a Fourth Circuit case, which says that the issue of the federalness of a crime is a jurisdictional issue, not something that's – there's no burden of proof on the prosecutor to prove that the defendant knew that the crime was a federal felony. Our argument is that had the court charged the jury that Ms. Adamson failed to report her concealment to a federal judge, I'm arguing the wrong point. I beg your pardon. It was supposed to report to the federal judge. That's right. The crime had been committed. So, all right. So here's one reason to think that the jury would have thought, would not have known that this was a federal crime. If the jury was not told that it had to be a federal crime, if the jury was told and could have found that it was not a federal crime. When Aisha and my client, Ms. Adamson and Mr. Lewis, spoke with one another on February 15th, Lewis was in Western Tidewater Regional Jail on state charges only. He wasn't indicted on federal charges until May 18th, which was three months after their conversation, and he wasn't arrested on federal warrant until the day after that. His first appearance in court was July 1st, which was five months. So my point is this. The jury could well have believed that Ms. Adamson was not interfering with a federal crime, that it was a state crime that he was interfering with. If the court had charged the jury properly that they had to find, as a first matter, that this was a federal crime, they could have acquitted her on this charge. You could still prevail on your argument, throwing out all this federal stuff, because that's a jurisdictional hook. And she may not have needed to know, and the jury may not have needed to know to convict her of that, but she at least needed to know that it was a felony. And in my view, that's where the jury charge might be. That the court didn't specifically charge the court, the jury, that it had to be a felony. That she knew it was, that she had knowledge that this was a felony. Right. Okay. How do you get past, assume you're right, how do you get past harmless error? I'm sorry, which case, Jeff? You ever heard of harmless error? No. You haven't? No. It has to be prejudicial error under Rule 52 of the Federal Rules of Criminal Procedure.  And how do you get past harmless error? The government asserts harmless error here and briefs it. You haven't mentioned it. You're out of time, but I suspect you'll have some. Very briefly. So the jury would have acquitted my client on these charges if she was properly charged on the misprision charge. Also, incidentally, the accomplice charge also has a federal requirement and the judge didn't charge the jury. That had to be a federal crime on the accomplice charge. But as for the misprision charge, you're correct, Judge. You can go one way or the other. If you want to go in the Evans case, you find it's a jurisdictional issue. I think the court jumped through hoops to come to that conclusion. A statute says what it means, and the statute says that it has to be a felony and it has to be a federal felony, and the court did not charge the jury that it had to be a felony or a federal felony. That's a simple argument, Judge. And how you go on that, whether you stick with Evans or go with the Ninth? And you don't want to engage in harmless error. Okay. That it was harmless error? I gave you a chance to explain it. How could it be harmless error if they would have acquitted her? I just gave you a chance to explain it because they argue it. All right. I appreciate that. It was not harmless error because she would have been acquitted had the jury properly charged the jury. Was she only charged in one count? Charged on two counts. One was the accomplice count and one was the Miss Pershing count. So there were two counts. One was what? I'm sorry, accomplice after the fact and Miss Pershing. She got a concurrent sentence. She got concurrent sentences, yeah. She got two six-months concurrent sentences. Yes, I did with harmless error. Yeah, yeah. Yeah, that's right. Thank you, Judge. Thank you. Ms. Engler? Ms. Engler? Good morning. Who do you represent now? Good morning. May it please the Court, I'm Cecilia Engler and I represent Dennis Addison. Mr. Addison doesn't contest that . . . Now, were you involved in the trial? I was not, Your Honor. We don't have anybody here involved in the trial. I don't think. Not on . . .                   not on behalf of Mr. Addison. What happened to those lawyers? I can assume they were appointed lawyers. Somebody must have released them and appointed you on them. I believe I replaced one of them as appellate counsel. I mean, I have on my paper here that the three of you, three lawyers here now were appointed and I really appreciate that. But I assume they were someone before you that was in the case, too, that was appointed. Anyway, you go right ahead. You represent Dennis. Dennis Adamson. Mr. Adamson does not contest that the five Suffolk robberies were properly joined for trial. But what he does contest is that the four ... He was convicted of five robberies, one over there in Suffolk? That's correct. He does ... That's where they went into the convenience stores and shot in the air and the ceiling of the care place of tension? Correct. And robbed the place and took off? Correct. He does ... What kind of an error can you claim that would be prejudicial enough to get him out from Well, our argument is that a sixth robbery that occurred in Portsmouth should not have been joined together. The sixth one was over in Portsmouth. And how far away is that? About 18 miles. 18 miles from Suffolk. Correct. Well ... And so that's out of town. From the ... They left town, but they left in the same car, didn't they? Well ... Was he robbing in Portsmouth with the same car? There was evidence ... He was robbing in the same getaway car. Well, I'd like to distinguish that a bit because the car that we're talking about was seen in a videotape of the last Suffolk robbery. Only that one. Not in the prior four robberies. Secondly, in the Portsmouth robbery ... It had only been seen in one of the five robberies. Correct. That car was ... Okay. That car was evidence in only one of the five. Was there also a large gap in time between the robberies? There is. How much time? There's a gap of eight months between the last Suffolk robbery and the Portsmouth robbery. So there's a temporal issue that you ... There's a temporal issue, and secondly, as far as the same car being used, there's no allegation that Mr. Adamson drove that car, well, away from the crime scene in the Portsmouth robbery. In that one ... Are you talking about the crime scene in Portsmouth?  Correct. He asked for a ride from his girlfriend. She dropped him off, and then 10 minutes later, he asked for a ride again. It was eight months after. It was eight months after, and the use of that car was different. It wasn't the same. He had asked for a ride, and Ms. Ely happened to be driving the same car. How much money did they steal at least, for me, and so on? Honestly, I don't remember. What kind of haul did they make? That's what they've called it. It was different, but I'll say that the haul was a lot greater in the five Suffolk robberies. They came at night. But the haul wasn't near as much as they had hoped for, I don't think, in some of these stories. I can't say how much they were hoping for. Well, you're the only one we got here right now talking. You don't know. You don't know how much was stolen. Well, different amounts in different ... You had the record. That's true. You know more about the record than I do. That's true. You've spent more time with it than I have. That's true. If I may, I would like to emphasize a couple of things. One is the severance issue. The most important thing I want to emphasize is that there was overwhelming evidence in the Portsmouth robbery, and much less evidence in the Suffolk robberies. And this goes to the great prejudice that there is in combining the two. Overwhelming evidence of the Portsmouth robbery. Of the Portsmouth robbery, correct. You said robberies, didn't you? I thought there was just one. There was one Portsmouth robbery. One robbery in Portsmouth. The proof was better. Much better. Much better. Much better. And so that ... And it was standard for the other five. Compared to the other five. And I'd like to briefly address the government's argument that there was a limiting instruction. And I want to emphasize to the court that because of this great difference in proof, the limiting instruction is not enough to counter the prejudice. And I would direct the court's attention to two cases. Are you complaining about the joinder or the failure to sever? What's the issue? Well, I'm jumping to the prejudice because prejudice is ... Prejudice from what? It's got to be from an error. Yes. The prejudice of joining the two ... The joinder. Goes to both the joinder ... That would be from the indictment then. You're talking about there was a prejudicial joinder in the charge returned by the grand jury. There were two mistakes. One was the prejudicial joinder for which prejudice is an issue. Second, the denial of the severance for which prejudice is also an issue. That the judge wouldn't fix it by severing your client or the Portsmouth charge. The Portsmouth charge. The Portsmouth charge and your client. My client in the Portsmouth charge. So you want that severed. That case severed. You've got a joinder problem. You attack it by joinder, you attack it by failure to sever. Correct. Both by the amount of prejudice. What's the law in this circuit? And I think generally in the federal courts on severances and joinders is pretty strong. It is pretty strong of joinders. It's really strong to the prosecutors. I think there's like a presumption that those who are charged together are tried together. There may be a presumption, certainly, and that is why we're not contesting the Suffolk cases. That was charged together. That was charged as a conspiracy. But I think that just because the same offense is charged does not automatically mean that you try them together. You might have an assault on federal property in Washington, D.C. You might have another assault on federal property in California. That doesn't mean you're going to try them together. Well, but that's not what we have here. No, it's not what we have. But I'm attenuating. Nobody has done it but California. I'm just attenuating the facts a little bit. For the same car. Well, okay, the same car was involved. But we have different law enforcement agencies, different jurisdictions. And I would like to talk about the limiting instruction for a moment. Because there was such a difference in the proof in each case, United States v. Files from this circuit cautions that where there's such a difference in proof, where there's a marked difference in the strength of the government's evidence, quote, we cannot presume that the jury adhered to limiting instructions and properly segregated the evidence into separate intellectual boxes. And this reasoning was followed in United States v. Hawkins, where even though there was a limiting instruction, the court found prejudicial misjoinder, where there was overwhelming in one case but not in the other. I'd like to just very briefly turn to the 404B evidence. Do you know what that red light means? Oh, yes. I am out of time. I apologize. I'll give you another 30 seconds. Okay. I'm talking about the text that was introduced by the government. This was sent by Mr. Adamson to Ms. Eli of a photo of her nude and of a gun. This was not relevant to any element of the offense. It was also not probative of any fact and issue. And it painted Mr. Especially compared to the weak evidence in the Suffolk cases, pointed him, painted him as a threatening person because this was a picture of a gun. She testified that this was, she considered this a threat. It also painted him as a reprehensible person that he would post a video of his girlfriend. And with that, I will wait for my rebuttal. Thank you. And you have some rebuttal time also. Mr. Wagner? Judge, nice to see you. It's good to see you, sir. May it please the court. I'm Rob Wagner. I represent Mr. Harvey Lewis in this case. I was not counsel at trial. Mr. Woodward was counsel at trial. The money that was taken in these various robberies was relatively low when we look at federal robbery cases, $900 in one, $900 in another, $2,000 in another, $1,109 in another. But our issue judge for Mr. Lewis focuses on counts three and four of the third superseding indictment. The victim in the case was asked the question whether this robbery occurred in 19, excuse me, in 2022. And the victim answered that, yes, it did. And there was no subsequent correction to that. And that is the basis for our sufficiency argument here, that it is the government's burden to prove beyond a reasonable doubt each and every element of the offense. And that date that was cited by the victim in the case left that particular issue in doubt. Weren't there videos of the crime? There are. And aren't they date stamped? They certainly were. And those were in evidence? They were in evidence. But the principal witness for this robbery. But the date stamp is ample proof, Mr. Wagner. I would disagree with the word ample, but it provided some measure of proof. It can be. We have to view it in the light most favorable to the prosecution. I mean, you know that. I can't argue with that, Judge. But you also have to find that the evidence was sufficient beyond a reasonable doubt to convict Mr. Lewis. And we submit based on that discrepancy in the evidence that the government failed to meet that standard. Is that the only issue you present? That's the only issue I present today, Judge. I rely on my briefs for the remainder of the issues, the other issue, the speedy trial issue. I really appreciate you being involved in this case. And I have the utmost respect and admiration for your work. Thank you, Judge. Appreciate that. I've known you for a long time. Thank you, sir. Thank you, sir. Now, Mr. Mosey? Yes, Your Honor. Thank you. Good to have you. Did you try the case? I did, Your Honor. Good for you. Good morning. May it please the Court. I'm Anthony Mosey for the United States. I'd like to address the issues in the same order that the defense addressed them. And that begins with the misprision statute. Your Honors, because the conduct forbidden by that statute, which requires the active concealment of a felony, is wrongful regardless of the underlying penalty of the felony, and because the word felony is nested, embedded within the jurisdictional hook of that statute. How is it wrongful if she doesn't know it's a felony? When concealment of a felony is what makes it a crime? The statute requires active concealment after someone has knowledge of the actual commission of a crime.  Correct, Your Honor. And in this case, we're talking about a Hobbs Act robbery. Those particular Hobbs Act robberies... So what evidence is there in the record that the defendant knew that robbery or felon in possession were felonies? Your Honor, there is evidence in the record, and if you can allow me to just briefly address that. So she was talking with her romantic partner at the time, Mr. Lewis, over a jail call, several of which were admitted into evidence. She talks and says to him that he should have disappeared this stuff, which we argued in our closing and at rebuttal meant gotten rid of the gun and the bullets, which would have been used for these offenses. The jury saw a form that she filled out to purchase a weapon for him previously, for which she used his actual debit card, and that after removing those items from his car, the jury heard evidence that she ran into a federal agent, an FBI agent, and at the time was told that it was likely that Mr. Lewis would be indicted. And at that time, she was actually concealing the keys to his car in her underpants on her person. So given that... In none of that description, did you use the word felony? My question was, what evidence was there that she knew that these robberies and the possession of that firearm were felonies? Your Honor, the... She clearly, I mean, crime, yes. Felony, that's the question I have. The suggestion is both that she was told that he could be indicted, as the court's aware indictment means that someone has been committing a felony. The court's aware of that? Is she aware of that? Lawyers might understand it. That's correct, Your Honor. Someone walking down the street might not understand it that way. I'll concede that she, there's no evidence in the record that she knew that that particular felony was punishable by more than a year. So if we conclude then that the Ninth Circuit was right and knowledge of felony status is required, how was the error not harmless? The argument... If we conclude it was error. I concede, Your Honor, it's not the strongest argument. I think that the evidence that was before the jury was that she was told that he could be indicted. The evidence was told by the FBI agent. What? I don't recall which specific agent because at the time it was joint FBI and local authorities, Your Honor. But, Your Honor, the investigators told her he could be indicted. Correct. And did they tell her that she knew it had to do with the robberies at these convenience stores? He was in custody on state charges for those robberies at that time, Your Honor. Yes. So that's the evidence we have. Your Honor, I concede again that I don't believe someone specifically used the word felony with her. Did anybody mention federal charges? Or was the FBI present when this happened? I mean, the FBI is federal. That's in the statute too. Correct, Your Honor. The FBI was not present while she was removing the items from the car, but this is sometime later, I think about two hours. There is an FBI agent present at that time, and there's evidence in the record that she was told that he could be federally indicted for this or would likely be federally indicted for this. She was told federally indicted? I believe so, yes, sir. Well, that's believable. I wish you could say she was told that. I can find that in the record. One way or another. But even if she was told he was going to be federally indicted, assuming that's the case, she was not told he was going to be indicted for a felony. That's the part I really am focusing on, not the federal jurisdictional hook part of it, but the thing that makes it a crime. Concealing a felony is what is the crime. Concealing a federal felony. Right. That's correct, Your Honor. And I think this is, if I may, I think this is why the Ninth Circuit's opinion in Olson should not be followed by this court. So for a couple of reasons. The first is that that word felony is sort of nested or embedded. Wait, can we get back to the, I did ask two questions that I still want an answer to. The first one was, well, I think I asked this one, whether there was evidence, I didn't ask this one, whether there's evidence that she knew that she knew he was a felon, so that she would know that he was a felon in possession. Circumstantial evidence, Your Honor. Again, there's the purchase of a firearm that she said was being used for her own personal use. That record was admitted into evidence. So because she lied on the form, basically, saying it was for her own personal use, that's some indication that an inference could be made that she knew she was getting it, that she had to hide that she was getting it for him because he was a felon. That's correct. Is that your sort of argument? Okay, then I want to go back to, you were about to tell me all the reasons we shouldn't agree with the Ninth Circuit. But my very first question was, assume we do conclude that the Ninth Circuit's analysis is correct, and so there was error. How was that error harmless? Again, Your Honor, because of the fact that she was told that he could have been, that he was going to be indicted, because of the fact that she was speaking with him while he was in jail, and I think because of the fact that any average person would assume that a serious crime or a felony. And so you're saying that the jury heard all of that and would have convicted her regardless of the improper jury instruction? Correct, Your Honor. Assuming the jury instruction was improper. That's correct, assuming that the jury instruction was improper, Your Honor. And in some ways, this is a bit of a chicken and egg problem. We, as the government, wouldn't have been allowed to introduce evidence about the fact that this was,  a federal felony because that wasn't an element of the offense. Arguably that could be prejudicial, in fact, to Ms. Aisha Adamson had we brought that information in. But I do think there is evidence in the record, again, circumstantial, and I want to be clear about that. But that's what she's charged with, so I don't know how it could be prejudicial to say it was a federal felony. Doesn't the indictment say? Again, it's a bit of a chicken and egg problem. That's what the indictment says. Go ahead. So with respect to Olson, Your Honor, that opinion I think doesn't, we start with the text and statutory interpretation, and here we're dealing with a statute that begins talking about the actual commission. And then there's the second part of a felony cognizable by the United States. And even the Olson opinion concedes that this jurisdictional hook is not something that the government has to prove as an element or prove knowledge as an element. I think it's analogous to that United States v. Evans case that this court decided in 2023. That involved an arson statute that prohibited the willful setting of fires without authority on federal land. The defendant in that case argued that the government should be required to prove as an element that he knew that it was, in fact, federal land. And this court said and reasoned no, that the wrongfulness of the act was the setting of the fire and that the fact that this, that the Congress had decided to protect federal land was simply the jurisdictional hook. Right. And the wrongfulness of the act here is concealing a felony. So how does she know she's committing the crime if she doesn't know it was a  If I can answer that question, Your Honor, if Congress in Evans had decided to, instead of say public land said Native American reservation or perhaps a military base like the base in Norfolk, I don't think the analysis in that case changes. It's simply that Congress has decided to protect a particular area of its jurisdiction and provide certain penalties for that. Here we have two statutes right next to each other, accessory after the fact, 18 U.S.C. 3 and 18 U.S.C. 4 misprision. And they're both sort of working in concert with one accessory after the fact, which provides for just offenses against the United States as the jurisdictional hook. And then right after that you have misprision, which provides heightened penalties for felonies up to three years, whereas accessory after the fact is just half of the punishment assigned to the underlying crime. It's similar to sort of the enticement cases that this court has dealt with before, whether or not a minor, the government's required to prove knowledge that the person targeted is under 18. So in trafficking cases, if the child is under the age of 18, that's 24-23 under Title 18, this court has held the government's not required to prove the knowledge that that individual is under 18. There's a similar statute, just general trafficking of adults, 24-21. And there, the penalty is much less. The wrongful conduct is trafficking here. And in accessory after the fact and in misprision, you are concealing some sort of crime. Misprision is just dealing with a, Congress has decided to punish the concealment of felonies more harshly. And that's, I think, what the Ninth Circuit hasn't really reconciled within Olson. The Ninth Circuit's talking about li paroda. And I think had it had the benefit of reading Ruan and Rehaif, some of these other subsequent decisions from the Supreme Court that talk about the presumption of scienter. And that presumption really attaches when you have a act that's, but for that particular element would be totally innocent or something that we would want a society to encourage. Ruan, as the court is aware, involved a doctor who was charged with controlled substances offenses. And in that case, the Supreme Court said that, well, you do need to in fact prove that he wasn't acting, that he didn't have permission to distribute these drugs because we want doctors to distribute drugs. And the same thing in Rehaif, people can lawfully possess firearms. However, in order to convict them of unlawfully, so the government has to prove that they knew that they were in fact prohibited from doing so because of their status. That's not so in misprision because the statute has been interpreted since the 1930s to require this concealment element. We're far from- Was that misprison statute adopted like in the country before? It was, Your Honor. It was in the Crimes Act of 1790 with the first Congress. What happened was that, and this is in sort of some of the law review articles that the Ninth Circuit talked about, that statute had not been really used until the 1930s. During that time, there are several decisions that say that we've gone far from the hue and cry practice of common law England. We have a modern police force. We don't need the populace to sort of go up in arms when we hear about crimes. Correct. It's commonly used in that context, Your Honor. That's right. And I think the word misprision of felony is perhaps not well applied here. It really should be called concealment of a felony because that's what the Ninth Circuit did in the 1930s. There isn't a constitutional issue here with roping in sort of these parade of terrors. The Ninth Circuit talks about charging people because a bunch of boys have stolen apples. What we're looking at here is knowledge of the actual commission of a felony and that you have to take an affirmative act to conceal it. That alone is enough to sort of avoid constitutional issues, and I think distinguishes this from all of the other statutes that the Supreme Court and this court have looked at where we say we do include this additional knowledge requirement. And the evidence here that she had knowledge of the actual commission of a felony is the FBI told her or somebody, FBI or state agencies told her that he was likely going to be indicted? Yes. After she's removed ammunition from his car, after she has told him that he should have gotten rid of his stuff. Oh, so that's right. That was after. So how did she know it was a felony when she did it? Because the misprision statute, Your Honor. Because you're saying she learned that we could infer that she knew it was a felony because the FBI agent told her he was going to be indicted. But when she committed the alleged crime, she didn't know that. She hadn't talked to any FBI agent. So how did she know it was a felony then? The statutory language requires that she did not make, I believe, as soon as possible, maybe known to some law enforcement. So at the time that she's in that vehicle, she's not with law enforcement. I suppose she could have picked up the phone and called her. But the clearest opportunity. Well, how long after she concealed it, did she have this encounter with the FBI agent? About two hours, Your Honor. And that's the clearest opportunity for her to say, there is something going on here. There were things in that car. And frankly. The problem is when you find out about it. You discover it. And then you're supposed to report it. The act of concealment is required. That's the element of it. And so the concealment here is that she's still hiding.  Is that she what? The concealment is. She's still, at that point, concealing from the officer. The things that are in the car. The fact that she has the keys to the car on her person at that time. All this was information that would have been useful to the government. And you said to the officer. Was that the time it was the FBI agent? Or the time it was a state officer? You said you didn't know when the FBI guy came. I know that the FBI agent was present. My understanding is there are also local agents there as well. So the only felony. I'm looking at the statute of language. The only felony that's really issued. Because it's the only one she could have had knowledge of the commission of. Is felon in possession of a firearm. There's no allegation that the basis of the misprision conviction. Is knowledge at the time that she met with the FBI agent. Of the other charged crimes. There is, Your Honor. The superseding indictment includes the possession of a firearm. Possession of ammunition. And also the Hobbs Act robbery. And she was told all of that by the FBI agent at the time? She was told that he was likely going to be indicted. And he was in jail for the robberies that had been committed. The purchase of the firearm had happened, I believe, some years earlier. Was that a Suffolk robbery or the Portsmouth robbery? Mr. Lewis was only involved in the Suffolk robberies, Your Honor. And if I may. So it was Suffolk? Correct. To briefly touch on the issue of Joinder, Your Honors. The defense focuses first on the geographic sort of disparity between these incidences. I confess that Suffolk is different than Portsmouth. But we're talking about a distance of less than 20 miles. And the conduct here, the scheme, the common thing, was that Mr. Adamson was in the business of robbing these commercial establishments while masked and while using a gun. He was unable to do this last robbery with Mr. Lewis because he had already been arrested at that point. Furthermore, with respect to the temporal time, this sort of eight months gap, there's actually a larger gap between the robberies he committed with Mr. Lewis. The first of those were in 2020, and then there's a two-year gap until 2022. Mr. Lewis is arrested in January of that year, and then we have the robbery in Portsmouth later in October. But putting aside those sort of, I think, somewhat granular distinctions, there's a wealth of evidence that the jury saw that's overlapping, and that goes to both the appropriateness of the Joinder in this case and also the fact that it was harmless. First, there was video surveillance of all of these crimes, and it's difficult to convey that on the record before this court, which is on paper, but it was something that the jury saw over and over again and that the government relied upon in our closing and in rebuttal. Mr. Adamson is a larger individual. He's about my height. The way that he moves on video is somewhat distinctive. He has a lazy eye. That was visible in video stills from the very first robbery in 2020 in Suffolk. It's visible in one of the robberies that happened about the middle of the scheme in Suffolk, as was identified by one of the witnesses. And finally, Nassili testified that he, of course, has a lazy eye. The relationships between these individuals was something that Judge Walker sort of highlighted in why Joinder was appropriate. Dennis and Aisha Adamson are brother and sister. Aisha Adamson is romantically involved or was romantically involved with Mr. Lewis. He actually sent her letters from jail in which he was trying to coach her on how to testify and place him as sort of a false alibi. And finally, Ms. Ely, who was involved with Mr. Adamson at the time, who was really overlapping with all of these, she could identify him in multiple of the stills. Her car was used in both the Portsmouth robbery and the final of the Suffolk robberies, which sort of deteriorated into a shootout. Finally, Your Honors, with respect to Mr. Lewis, counts three and four, the evidence is overwhelming that the corrected date of that offense was in 2020. It was simply a misspoke thing by the prosecutor. Your Honor, I see my time has expired. If I could briefly conclude. Thank you very much. Thank you very much, Your Honors. I appreciate your work. Mr. Dahmer. Thank you, Your Honors. I finally woke up. So there was no mention of a felony. There was no mention of a federal felony between Mr. Lewis and Ms. Adamson. There was no mention of a felony or a federal felony by the FBI agent. And Ms. Adamson had no record, so you can't assume that she might have known what a felony is by the description of what Mr. Lewis was making. So for these reasons, Your Honor, I think you're correct. I think that this case should be reversed because there was absolutely no evidence that a felony had been committed, that she knew a felony had been committed. Let me make one final argument. Didn't he direct her to buy the gun? So wouldn't that be evidence that she knew that he couldn't buy a gun because he was a felon? So, no, I don't think that's true. Why would he have then directed her to purchase it? Well, even if that were true, why would that indicate a felony? Because he was ineligible to purchase a gun. He was ineligible. How would she know that that was a felony? Well, I'm asking that she knew that he was ineligible to purchase a gun. Is that right? I don't. She wasn't. When she said on the form, did she indicate that it was for her use, that she was buying it? No, she didn't. Why was she buying it? I don't know. I don't know why they didn't question that, but I don't recall. I may be wrong about that. But, again, why would that indicate? We get to answer the questions. Yeah, I know. I'm sorry. We ask the questions. Who's asking the questions here? You're asking her questions. The fact that she was purchasing the gun for him and then giving it to him rather than him doing it himself is some evidence that she knew that he could not lawfully possess it. It is. Okay. But not that it was a felony. Your Honors. Anything else? I had one very quick thing, if you don't mind.  So even under Evans, the case should be reversed because under Evans, the court reversed the conviction in that case. Why? Because the judge told counsel that he couldn't argue that this was a federal felony, and it might go to the issue of knowingness, mens rea. So while it wasn't relevant to the burden of proof from the prosecutor, the jury had to believe that this was a federal felony. I'm sorry. That the jury could have been convinced. The judge should have allowed defense counsel to argue that she did not know this was a federal felony as a means of limiting the mens rea, showing that she didn't willfully break this law. And the judge refused to do it. And it was for the same reason in Evans that Evans reversed because the judge didn't allow the attorney to make that argument. Same thing happened in our case. We understand your position. Thank you, judges. Thank you for your patience very much. Appreciate it. Ms. Engler. Thank you, Your Honors. I would just like to respond to a few of the points that the government made as far as Mr. Adamson's claims. First, that they talk about the way that he moved, and I think there was no testimony, well there's very little testimony that examined the way the person moved in all of the videos to connect that they were all the same person. The government also mentioned that Ms. Ely testified that she could identify Mr. Adamson from the videos, but her testimony was impeached very completely as far as being able to identify him by what he was wearing. Counsel, she testified that she recognized the shoes that he was wearing because they purchased those together. She testified she recognized the black shorts he was wearing because they purchased them together, but it turned out on cross-examination that she began dating Mr. Adamson in December of 2020 and began only after that time was shopping with him, and those robberies were the shoes and the shorts were the way she identified him. Those robberies occurred a month earlier in November. So her credibility, her ability to identify Mr. Adamson based on what he was wearing was completely impeached. I'd like to conclude by saying that the government was able to bring in the Portsmouth case and identify and bolstered its weak evidence in the Suffolk cases by bringing in the Portsmouth case that had much more compelling evidence, and they also brought in irrelevant character evidence that likely affected the outcome of the Suffolk cases, and so Mr. Adamson requests that this court reverse his convictions. Thank you very much. We appreciate having you here, and I want to particularly . . . We're going to return to court here, but I want to like again say how much we appreciate the work that all of you have done, and particularly these defense appointees, appointed lawyers. You got in after the trial. We really appreciate your help, and we couldn't function without folks like you all. And Mr. Prosecutor, you've done a very committable job, and it's very good to have you here. We'll come down and greet counsel and adjourn court. This honorable court stands adjourned, sign die. God save the United States and this honorable court.
judges: Robert B. King, Stephanie D. Thacker, Nicole G. Berner